Jonathan Shub (CA Bar No. 237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ben Smith, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Frito-Lay North America, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff, by attorneys, alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Frito-Lay North America, Inc. ("defendant") manufactures, markets and sells corn chips purporting to contain a "Hint of Lime" under the Tostitos brand ("Product").

2. The front label representations include "HINT OF LIME," a transparent cut-out of a lime wedge with several drops representing lime juice, a green and yellow color pattern and the statement, "Here's Another Hint – Squeeze in More Flavor With Some Salsa."



3.  The representations mislead consumers as to the relative amount and quantity of lime ingredient.

I.  **CHANGING CONSUMER CONSUMPTION HABITS**

4.  Consumers "are eating fewer meals, yet snacking more than ever."[1]

5.  Consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients associated with positive health benefits.[2]

6.  Companies are increasingly emphasizing their additions of actual fruit ingredients to make up for what is not consumed through traditional meals.[3]

7.  Limes are one of the fruits that consumers increasingly add to foods, and their consumption has increased several hundred percent since 1990.

8.  Market price data confirms the popularity of limes, as their price has risen

---

[1] Elizabeth Louise Hatt, Snackin' in the sun, Winsight Grocery Business, May 1, 2013.
[2] FONA International, Trend Insight: Indulgence, November 28, 2018.
[3] Mondelez Global, State of Snacking: 2020 Global Consumer Snacking Trends Study.

2
**CLASS ACTION COMPLAINT**

consistently over the past two decades.

9. Reasons for consumers elevating limes above other citrus fruits include taste, texture, health benefits and adaptability.

10. Other reasons include the growing American appreciation for aspects of Hispanic cultures, where the lime has long been afforded primacy among fruits.

11. The use of limes is especially significant in consumption of Mexican foods, such as tortilla chips, or Corona, the preeminent Mexican beer.

12. In California, with a large Hispanic-American population and influence, the price of limes is higher than other states, because of the increased demand for limes and products containing limes.

**II.    CONSUMERS ARE MISLED BY THE REPRESENTATIONS**

13. Consumers understand "hint" in the statement, "HINT OF LIME," the same way as its dictionary definition – a slight but appreciable amount.



14. The other front label statement declares, "HERE'S ANOTHER HINT – SQUEEZE IN MORE FLAVOR WITH SOME SALSA!"



15. By stating, "Here's Another Hint," consumer expectations that the Product will have a "slight but appreciable amount" of lime is confirmed.

16. The directive to "Squeeze In More Flavor [With Some Salsa!]" refers to the method by which lime is added to a food – by squeezing the ends of a wedge to express the juice.

17. Indeed, the front label contains four large droplets purporting to have come from the lime immediately below.

18. By stating, "Squeeze in *More* Flavor," consumers get the impression that the Product contains actual *squeezed* lime ingredients – hence the direction to "Squeeze" more flavor.

### III.   FRONT LABEL "DISCLAIMER" IS NOT VISIBLE AT POINT-OF-SALE

19. The front label attempts a "disclaimer" in the lower left corner, which states, "FLAVORED TORTILLA CHIPS."




20. Federal and state regulations require that the front label, or principal display panel ("PDP"), contain a brief description of what a food is. *See* 21 C.F.R. § 101.3(b).

21. "Flavored Tortilla Chips" is the Product's statement of identity because it is the common or usual name of the food. *See* 21 C.F.R. § 101.3(b)(2).

22. This is required to be "presented in bold type on the principal display panel, [and] in

1  a size reasonably related to the most prominent printed matter on such panel, and [shall be] in lines
2  generally parallel to the base on which the package rests as it is designed to be displayed." *See* 21
3  C.F.R. § 101.3(d).

4  23. While "Flavored Tortilla Chips" may be in bold type, it is not "in a size reasonably
5  related to the most prominent printed matter on such panel," such as "HINT OF LIME," or
6  "TOSTITOS."

7  24. Instead, "Flavored Tortilla Chips" is not visible to consumers who come upon the
8  Product at the supermarket or convenience store because (1) the size is miniscule and (2) the weight
9  of the contents causes the bag to crumple over slightly at the bottom edges, obscuring it.

## IV. FRONT LABEL DISCLAIMER FAILS TO DISCLOSE THE PRODUCT DOES NOT CONTAIN A "HINT OF LIME"

25. Even if consumers noticed "Flavored Tortilla Chips" *after* seeing the other representations, they would not know this meant the Product did not contain a "Hint of Lime."

26. The word "flavored" separates "food" from "flavor."

27. For example, lime juice or lime oil is considered food, because it is a source of nutritive value.

28. Lime flavor is the concentrated, compounded, synthesized and stripped-down version of lime juice or lime oil, "whose significant function in food is flavoring rather than nutritional." *See* 21 C.F.R. § 101.22(a)(3).

29. Federal and state regulations require that where a food has a "characterizing" flavor, it is required to be disclosed so consumers are not misled as to the source of that flavor. *See* 21 C.F.R. § 101.22(i).

30. A careful reading of the regulations reveals that the word "Flavored [Tortilla Chips]" is an implicit admission that the Product does not contain a "Hint of Lime," but a *de minimis* amount of lime.

31. If the Product obtained its characterizing lime flavor only from its characterizing ingredient of limes, it would say "Lime Tortilla Chips." *See* 21 C.F.R. § 101.22(i)(1).

32. The term "flavored" is used because the Product either has (1) "natural flavor derived

from" limes and "an amount of characterizing [lime] ingredient insufficient to independently characterize the food," or (2) "no such [lime] ingredient." *See* 21 C.F.R. § 101.22(i)(1)(i) (requiring that "the name of the characterizing flavor may be immediately preceded by the word 'natural' and shall be immediately followed by the word 'flavored,'" i.e., "strawberry flavored shortcake.").

33. In either scenario, the word "flavored" is a "tell" that the Product contains at most, an amount of lime "insufficient to independently characterize the food."

34. This is the opposite of the word "hint," defined as a slight, but *appreciable* amount.

35. The ingredient list fails to offer clarity to consumers who expect tortilla chips with a non-de minimis amount of lime, because it lists "Natural Flavors."

INGREDIENTS: Corn, Vegetable Oil (Corn, Canola, and/or Sunflower Oil), Maltodextrin (Made from Corn), Salt, Sugar, Natural Flavors, Dextrose, Sour Cream (Cultured Cream, Skim Milk), Whey, Spice, and Yeast Extract.

**INGREDIENTS:** Corn, Vegetable Oil (Corn, Canola and/or Sunflower Oil), Maltodextrin (Made from Corn), Salt, Sugar, Natural Flavors, Dextrose, Sour Cream (Cultured Cream, Skim Milk), Whey, Spice, and Yeast Extract.

36. There is no reason for consumers to expect the Product lacks an appreciable amount of lime, because the ingredient list contains real corn, the main component of tortilla chips.

37. "Natural Flavors" is the term used where a mix of extractives and essences from various fruits, along with additives and solvents, are combined in a laboratory.

38. "Natural Flavors" fails to tell consumers that the Product has a negligible amount of lime and its "lime taste" is from non-lime ingredients.

39. Because lime juice or lime oil is not a separately identified ingredient, it means that any real lime is present as a flavoring and is a *de minimis* or a trace amount of the "Natural Flavors."

40. According to flavor expert Bob Holmes, if a product provided "all the flavor depth" of a lime, the label would state, "lime juice" instead of "Natural Flavors."

41. The Product's "Natural Flavors" consists of flavor compounds which imitate the

1 taste provided by limes.

2   42. These compounds are less expensive and more concentrated than real limes and lack the flavor depth of limes.

4   43. Limes gets their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons, and ketones.

6   44. These compounds give limes their characteristic sour and bitter taste, complemented by tartness.

8   45. However, the Product's "lime" taste is mainly from added limonene and citral, through the isomers neral and geranial, and lacks the other compounds essential to a lime's taste.

10   46. These compounds provide the "woody" and "piney" notes of real limes.

11   47. Lab analysis reveals or would reveal a relative abundance of limonene and citral, compared to the other key odor-active compounds in limes, which confirms a *de minimis* amount of lime.

14   48. The relative absence of these complementary flavor compounds causes the Product to lack an authentic lime taste.

16   49. The absence of these compounds indicates the use of less real lime ingredients than consumers will expect.

## V. CONSUMERS VALUE LIMES BEYOND THEIR TASTE

19   50. Consumers prefer foods which get their taste from ingredients instead of added flavors, because this is perceived, and is, more natural, less processed and not exposed to additives or solvents that are used in making "natural flavors."

22   51. Consumers and plaintiff value limes for their ability to confer nutritive and health benefits.

24   52. Limes are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

26   53. The polyphenol antioxidants in limes are linked with reducing hypertension and increasing immunity.

28   54. The Product is unable to confer any of the health-related benefits because it has less

lime ingredients than it purports to.

55. The cost of using more lime ingredient would be approximately $0.08 per 300g, which would not be a significant addition to the Product's price.

56. Tortilla chips with a slight, but appreciable amount – a "hint" – of lime are not a rare or pricey delicacy such that it is unreasonable to expect this.

## VI. RELIANCE AND ECONOMIC INJURY

57. Plaintiff saw and relied on the label, which misleadingly states, "Hint of Lime," "Here's Another Hint – Squeeze in More Flavor With Some Salsa," and includes a transparent cut-out of a lime wedge with several drops representing lime juice, and a green and yellow color pattern.

58. Plaintiff sought to purchase a product with a materially greater amount of lime ingredients than was present.

59. Plaintiff expected that most or all the lime taste would be from real limes, which are depicted on the front label.

60. Plaintiff did not expect the lime taste to be provided mostly, or all, by non-lime sources.

61. Plaintiff purchased the Product in part to obtain the nutrient benefits associated with limes.

62. Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

63. The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

64. Plaintiff paid more for the Product than he otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

65. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.29 for a 13 OZ (368.5g) bag, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## INTRADISTRICT ASSIGNMENT

66. Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland or San Francisco Division.

**PARTIES**

67. Plaintiff Ben Smith is a resident of Emeryville, Alameda County, California.

68. During the relevant statutes of limitations for each cause of action, including between May and June 2021, Plaintiff purchased the Product for personal and household consumption and use, in reliance on the representations.

69. Plaintiff purchased the Product at stores including Pak 'N Save Foods, 3889 San Pablo Ave, Emeryville, CA 94608.

70. Plaintiff understood the representations to mean all or most of the Product's lime taste was from real limes.

71. Plaintiff did not expect the Product to contain a *de minimis* amount of lime.

72. Plaintiff is a layperson and not a food scientist or regulatory specialist.

73. Plaintiff did not, nor could he be expected to know, that the word "Flavored" was a tacit admission that the Product did not contain an appreciable amount of lime.

74. Plaintiff did not, nor could he be expected to know, that "Natural Flavors" is a technical term which *may* contain a negligible amount of lime, but is mainly concentrated and synthesized flavor compounds that imitate lime.

75. Plaintiff did not observe the statement, "Flavored Tortilla Chips," because this was not visible to him based on its minute size and placement at the bottom corner.

76. Plaintiff expected more than a lime taste, but the other benefits which are conferred through consumption of lime ingredients.

77. Plaintiff would buy the Product again if assured it was flavored exclusively or predominantly by limes.

78. Defendant Frito-Lay North America, Inc., is a Delaware corporation with a principal place of business in Plano, Collin County, Texas.

79. Defendant is the world's leading seller of corn and potato chips.

80. The Tostitos brand is the best-selling brand of tortilla chips in the world.

81. Based on current projections, sales of tortilla chips are on track to eclipse potato chips in 2025.

82. The Product is sold in thousands of locations – grocery stores, drug stores, big box stores, convenience stores, etc., and online, throughout California.

## JURISDICTION AND VENUE

83. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)(A).

84. Plaintiff Ben Smith is a citizen of California.

85. Defendant Frito-Lay North America, Inc. is a Texas citizen because it has its principal place of business in Texas.

86. The parties are citizens of different states.

87. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

88. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District – the purchases of Plaintiff and his awareness of the representations and omissions identified here.

89. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## CLASS ACTION ALLEGATIONS

90. Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3).

91. Plaintiff seeks to represent all persons who purchased the Product for personal or household consumption and use since June 24, 2015, residing in California (the "Class" or "California Class").

92. The Class consists of thousands of persons, and joinder is impracticable.

93. Common questions of law or fact predominate and include whether defendant's representations and omissions were and are misleading and if plaintiff and class members are entitled to injunctive relief and damages.

94. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

95. Plaintiff is an adequate representative because his interests do not conflict with other members.

96. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

97. A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

98. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

99. Plaintiff seeks certification of a class for injunctive relief under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class.

100. Plaintiff seeks certification of a class under Rule 23(b)(3) because common issues predominate over questions affecting individual members and Defendant has acted or refused to act on grounds that apply generally to the Class.

101. Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

102. Plaintiff incorporates all preceding paragraphs.

103. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

104. Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

1. 21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

2. 21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

3. 21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

4. 21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

5. 21 C.F.R. § 102.5, which prohibits misleading common or usual names.

105. Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

106. Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

1. Section 110100 (adopting all FDA regulations as state regulations);

2. Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

3. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

4. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or

offer for sale any food … that is falsely advertised.");

5. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

6. Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

7. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

107. Each of the challenged statements made and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

108. Defendant leveraged its deception to induce Plaintiff and class members to purchase a product that was of lesser value and quality than advertised.

109. Defendant's deceptive advertising caused Plaintiff and class members to suffer injury-in-fact and to lose money or property.

110. Defendant's actions denied Plaintiff and class members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and contain virtually the same or immaterially different amounts of lime.

111. Had Plaintiff and class members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

112. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

113. Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq*. –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

114. Plaintiff incorporates all preceding paragraphs.

115. California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

116. The false and misleading representations of the Product constitutes "unfair" business acts and practices because it is immoral, unscrupulous, and offends public policy.

117. The gravity of the conduct outweighs any conceivable benefit.

118. The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and class members.

119. Defendant's representations and omissions are likely to deceive Plaintiff and Class Members about the absolute and relative amounts of real lime used in the Product.

120. Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

121. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

122. Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

123. Plaintiff incorporates all preceding paragraphs.

124. California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

125. Defendant makes "false [and] misleading advertising claim[s]," by deceiving consumers as to the absolute and relative amounts of lime in the Product.

126. In reliance on the false and misleading advertising, Plaintiff and class members purchased and consumed the Product without the knowledge it contained a *de minimis* amount of lime and a relatively substantial amount of non-lime.

127. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

128. As a result, Plaintiff and class members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## FOURTH CLAIM
### Unjust Enrichment

129. Plaintiff incorporates all preceding paragraphs.

130. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed class, prays for judgment and relief on all of the legal claims as follows:

A. Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B. A declaration that Defendant has committed the violations alleged herein;

C. For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq.;

D. For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq.*;

E. For punitive damages;

F. For interest at the legal rate on the foregoing sums;

G. For attorneys' fees;

H. For costs of suit incurred; and

I. For such further relief as this Court may deem just and proper.

Dated: June 24, 2021

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2 | /s/ Jonathan Shub |
| 3 | Jonathan Shub (CA Bar No. 237708)<br>Kevin Laukaitis* |
| 4 | **SHUB LAW FIRM LLC**<br>134 Kings Hwy E Fl 2 |
| 5 | Haddonfield, NJ 08033<br>T: (856) 772-7200 |
| 6 | jshub@shublawyers.com<br>klaukaitis@shublawyers.com |
| 7 | **SHEEHAN & ASSOCIATES, P.C.** |
| 8 | Spencer Sheehan*<br>60 Cuttermill Rd Ste 409 |
| 9 | Great Neck, NY 11021<br>T: (516) 268-7080 |
| 10 | spencer@spencersheehan.com |
| 11 | *_Pro Hac Vice_ Application Granted, Pending or Forthcoming |